Hurlbut, J.,
rendered the opinion of the Court.
The original complaint in this action was filed August 8, 1902, by plaintiff in error (plaintiff below), and the action was. brought' to enforce the Collection of a judgment for $6,378, rendered January 5, 1901, in favor of plaintiff Tibbetts, against David P. Terrill. The judgment was recovered in Arapahoe County, in the Second Judicial District, and transcript thereof filed for record with the clerk and recorder of Rio Blanco County, on the 18th day of January, 1901. Plaintiff caused execution thereon to be issued and sent to the sheriff of Rio Blanco County, who levied upon the property in issue on April 29, 1901. After the levy, Louise C. Terrill brought an action against Tibbetts et al., in the District Court of Rio Blanco County '(June 18, 1901), and succeeded in securing a restraining order, out of that coürt against the sheriff of Rio Blanco County, therein recalling the said execution, vacating the levy, and prohibiting the sheriff from further proceeding to advertise and sell the property under the execution. Apparently that suit was never prosecuted to a final hearing. On September 9, 1901, and while the in june-, tión suit was pending, plaintiff Tibbetts caused a lis pendens to be filed with the clerk and recorder of said Rio Blanco' County, it being therein stated that on November 22, 1900, defendant David P. Terrill, then being the record owner of the premises, conveyed the same to John L. Gray, his attorney ; that on December 30, 1900, said Gray deeded the premises to defendant Louise C. Terrill, wife of said David! P. Terrill; that on October 3, 1901, the said Louise C. Terrill, with full knowledge and notice-of the filing of said transcript of judgment, and lis pendens, as aforesaid, deeded said property to defendant J. A. Alley; that said lis pendens gave notice that plaintiff would urge and contend that the transfers and conveyances made by said David P. Terrill, John L. Gray and Louise C. Terrill, as aforesaid, were without considera *66 tion, fraudulent, and void as against plaintiff Tibbetts. After said restraining order had! been issued, and after the conveyance of the property hereinbefore mentioned, the present action was begun. It seeks, to secure a dee’ree of the court canceling all said conveyances, subjecting the property to -plaintiff’s lien, and ordering the property sold to satisfy the judgment of $6,378.
This is the second time this case appears in our appellate courts. At the first trial judgment was rendered for defendants Alley et al., from which- plaintiff prosecuted! an appeal to. the Supreme Court, which court, in April, 1908, reversed the judgment and remanded the case. Tibbetts v. Terrill, 44 Colo. 94, 96 Pac. 978, 104 Pac. 605. It was tried again in the District Court without a jury, and judgment was again rendered for defendant Alley, from which this.appeal is taken. In the second trial all the evidence which had been introduced at the first trial was admitted, followed by other evidence upon an issue which had been formed by an amendment to defendants’ original answer, the issues thus tendered pertaining to- improvements made on the property after Alley’s purchase, and to a mortgage existing thereon at the time Tibbetts fastened his judgment lien on the property. The amendment was apparently filed because of the language used by the Supreme Court in the latter part of its opinion in the Case cited.
The statement of the facts of this case by Justice Bailey in Tibbetts v. Terrill, supra, renders it unnecessary for us to restate them in full. In that case the Supreme Court substantially held that, although defendant Alley paid to Mrs. Terrill full value for the property, he was not a purchaser in good faith without notice; that the deeds between the Terrills and Gray were fraudulent and void as against the judgment creditor Tibbetts; that Alley made the purchase with knowledge and information, by himself and his attorney, of the recorded lis pendens and levy, and other facts and circumstances sufficient to put him on inquiry as to the fraudulent character of the deeds between defendants David and Louise *67 Terrill and Gray; that such facts and circumstances were sufficient to put Alley on his guard, and imposed upon him the duty of further investigating the charge of Tibbetts that such deeds were fraudulent as to him; further holding that the title of defendant Alley, acquired by him through the deed of Louise C. Terrill, was subject to the payment of plaintiff’s judgment of $6,378, less $2,000 which Alley was entitled to as a prior claim, through and by virtue of the homestead filed by Louise C. Terrill, September 5, 1901. After that opinion had been rendered, appellant Tibbetts filed in the Supreme Court ai motion asking that court to direct the entry of judgment in the lower court in accordance with its opinion. Appellee Terrill also filed a motion asking that the amount of the two mortgages which were standing- against the premises when defendant Alley purchased the same from Louise C. Terrill, and which Alley had paid off and cancelled after his purchase, be declared to be a superior lien to that of appellant Tibbetts. The Supreme Court denied both motions in the following language:
“There is nothing in the pleadings concerning these incumbrances, neither is there anything in the original briefs filed in this court relating- to them. It appears by the abstract that the consideration' paid -by the appellee was in part the payment of certain incumbrances, but no issue was made of that matter in the trial court, and we cannot, upon motion, after the rendition of an opinion, determine the merits of a controversy which was not involved in, nor passed upon by, the trial court.”
The amendment to the answer above alluded to set up, substantially, that the mortgages were in favor of one C. J. Dickinson, mortgagee, and that the $4,000 represented thereby was a part of the original purchase price in the sale from Dickinson to David P. Terrill; that Alley had purchased the premises in good faith, and paid off. the $4,000 represented by said mortgages, with interest, and had caused both to be released of record. The amended answer further alleged that *68 defendant Alley -had placed improvements upon the premises, after his purchase from Louise C. Terrill, of the value of $1,700, which is' conceded.
There are but two' propositions for consideration by the court on this appeal, viz : (1) Whether or not defendant in error Alley is entitled to an allowance for the improvements placed on the property after his- purchase from Mrs. Terrill, and' entitled to claim the same as a superior lien to that of Tibbetts’ judgment; (2) whether or not Alley should be subrogated to the rights of the mortgagee Dickinson, by reason of having assumed the mortgage of $3,000 at the time of his purchase, and which mortgage he subsequently paid, and whether or not he is entitled to like subrogation after paying off the $1,000 mortgage.
We may say at this time that the questions (1)' as to whether or not defendant in error Alley was an innocent pur^ chaser for value without notice, from Mrs. Terrill, (2) as to whether or not he had sufficient knowledge of the facts and circumstances surrounding the giving and receiving of the fraudulent conveyances aforesaid to put him upon inquiry and-cause him to investigate further the validity thereof, as against Tibbetts’ judgment lien, (3) as- to whether or not said conveyances were without consideration, fraudulent, and given to hinder and «delay the creditor Tibbetts from collecting his said judgment, and (-4) as fo whether or not Alley is deemed in law to have possessed constructive knowledge of the fraudulent character of said conveyances and want of title in his grantor, Mrs. Terrill, to convey the premises to him free from Tibbetts’ lien — have all been decided and disposed of by the Supreme Court in the case cited, against the claims and contentions of. Alley. The rulings of the Supreme Court upon these questions are binding upon us under the doctrine of the "Law of the Case,” which is invoked by plaintiff in error.
It may be well, to notice here that although the answer as amended alleges that the property was incumbered to Dickinson for $4,000 at the time Alley purchased from Mrs. Ter *69 rill, and: the same was part of the original purchase pride from Dickinson to David Terrill, the record seems to show that only $3,000 thereof was a part of such purchase price. The abstract of title (in evidence) shows that the mortgage to Dickinson from David Terrill for $3,000 was on record before Tibbetts’ transcript of judgment was rec’orded, while the other $1,000 was represented by a mortgage given for that amount to Dickinson by Mrs. Terrill on April 10, 1901, recorded April 22, 1901, which was after the filing of Tibbetts* transcript of judgment. It further appears from the record that the written contract of sale between Mrs. Terrill and Alley makes no mention of the last mentioned mortgage, so that Alley did not assume or agree to pay the same. The facts concerning the payment of this $1,000 mortgage by Alley, as disclosed by the record, are ás follows: When the deed from Mrs. Terrill was delivered to Alley on October 28, 1901, he, at her request, paid to the bank, to the credit of Dickinson, $1,000, which sum was deducted from that part of the purchase price which Alley had agreed to pay Mrs. Terrill that day. The $1,000 so paid to Dickinson was for the sole purpose of discharging that mortgage.
Now, as to the question of improvements made by Alley and. his right to a lien therefor, it is well to call attention tO' the circumstances under which such improvements were made. As said by the Supreme Court, Alley bought the preim ises with knowledge and information of the fraud perpetrated upon Tibbetts by Mrs. Terrill and her grantors, or at least with knowledge of facts and circumstances which in law imposed upon him the duty, before buying the premises, of investigating further the title of Mrs. Terrill. We think, as regards these improvements, that Alley, having constructive knowledge, as he did, of the fraudulent character of the conveyances from David Terrill and Gray, down to his immediate grantor Mrs. Terrill, expended his money in improving the property, well knbwing that Tibbetts was vigorously following up his claim and contention that Mrs. Terrill’s title *70 was fraudulently obtained, and was invalid as against his judgment lien. It was in no way imperative that Alley should have made such improvements. His failure to do so- would in no way have jeopardized the title which he thought he had. Under such circumstances common prudence should have caused him to refrain from expending any money on the premises other than was absolutely necessary to- prevent loss of the same, until after the claims of Tibbetts had' been finally determined. This being the situation we are unable to- agree with his contention that he should be reimbursed for the improvements placed on the premises after his purchase. He made such improvements at his own peril, so far as Tibbetts is concerned, and ought to suffer the -consequences. As between himself and Mrs. Terrill, he had the legal title to- the property, and had a right to do with it as he chose, but he assumed the risk of proving he was an innocent purchaser for value without notice. Shand v. Hanley et al., 71 N. Y. 319; Linthicum and wife v. Thomas, 59 Md. 574. In Strike v. McDonald (2 Harris & Gill) 13 Md. 142, we find this language:
“The quoted passage of Sugd. 525, furnishes a sound practical rule for rejecting claims for improvements, where the transaction is tainted with fraüd. It is expressed nearly in these words: If a man has acted fraudulently, and is conscious of a defect in his title, and with that conviction on his mind, expends a sum of money in improvements, he is not entitled to avail himself of it.”
We are of the opinion that the District Court erred in allowing- for- the improvements made by Alley and decreeing the same to- be a prior lien to that of Tibbetts’ judgment.
Wé come now to- the question of subrogation as applied to the mortgages paid by Alley after his purchase. We will first consider the mortgage of $1,000 given by Mrs. Terrill to Dickinson after Tibbetts’ transcript of judgmeht had been recorded. The determination of this question should require but little space, as Alley’s position concerning- this payment *71 does not appear to> us to warrant the interposition of a court of equity to save him from any loss he might have sustained through the release of that mortgage. The mortgage was recorded over three months after the recording of the transcript of judgment. Alley not only had constructive notice of the recorded transcript, but he had actual -notic'e thereof at the time he paid off the mortgage. Thé lien created by the filing- of the transcript of judgment was paramount-to that of the mortgage, and was in no way affected by it; hence the court erred in decreeing this mortgage to be a prior lien to that of the judgment.
There is but one question remaining for determination, viz: the right of Alley to' be subrogated to Dickinson, mortgagee, through payment and release of the $3,000 mortgage. The record shows that at the time Alley purchased the premises from Mrs. Terrill he assumed and agreed to pay that mortgage. It may be well to’ briefly recite Alley’s position in Connection with the payment of this mortgage. The pleadings nowhere charge Alley with fraud or with knowledge of the fraud practiced upon Tibbetts, through the execution of the fraudulent deeds" referred to, and do not charge him with participation therein. The complaint goes no further than to charge him with notice of the recorded lis pendens and its contents.
From the evidence and findings of the court it appears that Alley was a resident of the state of Missouri, had only been in Colorado’, or in the vicinity of the premises, about a week before he made the purchase, and had never known David or Louise Terrill, or Gray, prior to that time; that he personally knew nothing about the fraud practiced against Tibbetts by the Terrills and Gray, in the execution and delivery of the said conveyances; that he never had any conversation with any of said parties, or with any one else, concerning the purpose or intent of any of them in the execution and delivery of the deeds; apd that at the time the deeds were made he was not within the boundaries of the state, and those *72 people were entire strangers to' him. From this it would appear that the only knowledge he had of the fraudulent purpose in giving and recording such deeds was sudi knowledge, necessarily constructive, as the law charged against him through notice of the recorded lis pendens, levy, and other documents. He might have examined the records thoroughly and made every effort to obtain therefrom information concerning the motives of the Terrills and Gray in giving the deeds, and still the limit of information so acquired would, have been that Tibbetts- claimed and contended that the fraudulent deeds were given solely for the purpose of fraudulently defeating him in the collection of his judgment out of the premises. It is more than probable that the question of intent or evil design on the part of the Terrills and Gray in giving the deeds would have remained a closed secret to Alley. He might have interrogated them concerning such- intent and design, and would in all probability have- failed to elicit any information from them on that subject. It is c'ertainly a reasonable presumption that none of them would have taken him into' their confidence, and divulged to him their fraudulent design and purpose in executing the deeds. We have already seen that the Supreme Court held this, constructive knowledge possessed by Alley was sufficient to defeat his claim that he was an innocent purchaser for value without notice, thereby holding that he took no title to' the premises as against the judgment lien, through the deed executed to him by Mrs. Terrill. Therefore any question as to Alley having any title to the premises as against Tibbetts, by virtue of Mrs. Terrill’s deed to. him, is closed. Alley is not here complaining on that score, and concedes he has been defeated on that issue; but he vigorously contends that while Tibbetts v. Terrill, supra, destroyed his title under the deed from Mrs. Terrill, so far as Tibbetts’ judgment is conc’erned, it did not pass upon or determine his- equitable rights emanating from his payment of the $3,000 mortgage. In this contention he is clearly right. The Supreme Court expressly refused to *73 consider this point. Nothing said in that case can be taken or considered as applicable to this question. In fact the Supreme Coürt in that case had under consideration but two questions, one pertaining to the homestead claim, and the other to Alley’s title under his deed from Mrs. Terrill as against Tibbetts’ judgment lien. We believe its reasoning and analysis of the evidence was intended to be applied only to the issue under'Consideration, viz: Was Alley an innocent purchaser without notice ? The rule there was clearly defined, but went no further than to hold that a purchaser from a fraudulent grantee was not an innocent purchaser for value without notice, when the record disclosed that he had knowledge of facts and circumstances at the time of purchase which would'put a prudent man upon inquiry, and which if followed up by investigation would have disclosed the fraudulent and defective title of his grantor.
“The rule is familiar that general language in an opinion is to be taken in connection with the facts of the particular case. * * * To make the matter entirely clear we Call attention to- the difference in the character of the action and the issues therein.” Halbouer v. Cuenin, 45 Colo. 507, 101 Pac. 763.
There is reputable authority holding that a purchaser from a fraudulent grantee cannot be deprived of his title unless it is shown that he had actual knowledge of the fraudulent intent and design of those actually participating in the fraudulent transaction, and that Constructive knowledge, such as given by the record, etc., is not sufficient. Whatever may be the rule in other jurisdictions, we recognize only the rule adopted by our Supreme Court.
The question of Alley’s title then having been disposed of adversely to him, has he, under the facts and circumstances here disclosed, any standing in a court of equity for relief against the judgment lien, by reason of having paid off the $3,000 mortgage? We recognize that there is a decided conflict of authority upon this question. It must be conceded *74 that, when Alley purchased', he knew the Us .pendens was on record, which notified everybody that Tibbetts claimed that the deeds from David Terrill to Gray, and from Gray to Mrs. Terrill, were fraudulent and void, given without consideration, and executed for the purpose of hindering, delaying and defrauding- Tibbetts and other judgment creditors of David,Terrill; that a levy had been made on the premises under execution issued upon the Tibbetts’ judgment; and that he knew of facts and circumstances which, if investigated, would have informed him that a transcript of the Tibbetts’ judgment had been recorded. AVhile this constructive knowledge must be attributed to Alie}'-, there is not a word in the record that even tends to show that he was a participant in the frauds, or had any notice or knowledge whatever of the evil intent or design of the Terrills or Gray in executing the Conveyances aforesaid. The record shows that he was not in the state when they were given and never knew either of the Terrills or Gray until about one week before he purchased the property. This was about ten months after the fraudulent deeds had been given. The written agreement of purchase between Mrs. Terrill and Alley was made October 3, 1901. Soon after this he went to his home in Missouri, and did hot return until about October 28, 1901. In the meantime he had employed two attorneys to examine the title, one of whom had at one time been Mrs. Terrill’s attorney. The other had never been attorney for either of the Terrills. Both advised him that Mrs. Terrill had a good title to the premises, and that the claim of Tibbetts as against Mrs. Terrill’s title was unfounded and of no force or effect. He relied wholly upon this advice, and, believing Mrs. Terrill had a good title, made the 'purchase. The record does not tend to show that when Alley made the purchase he intended thereby to further the fraud previously Consummated by the Terrills and Gray, or intended in any way to commit any fraud upon Tibbetts or any one else. Alley’s situation is about as follows': By the Supreme Court decision he lost his title as *75 against Tibbetts’ judgment lien, except the $2,000 saved to him through'the homestead filing of Mrs. Terrill; also the $3jooo paid to Mrs. Terrill at} the time he took his deed, ana all taxes paid. We have just decided that he loses the $1,700 paid for improvements, and the $1,000 with interest, which he paid to release the second Dickinson mortgage, in addition to which he loses his costs and attorney’s fees, which is doubtless quite an item. Must such losses now be augmented by the $3,000 which he paid to release the first Dickinson mortgage ? Alley strenuously contends that he paid off this mortgage in the utmost good faith, relying on his attorneys’ advice and believing that he had a good title to the premises.
It is well worthy of notice that the lis pendens was filed by Tibbetts after the suit was instituted by Mrs. Terrill against the sheriff of Rio Blanco county to restrain him from advertising or selling the property. The record shows the sheriff was enjoined from selling, and' that he released the levy previously made under the execution, all of which Alley hadl full knowledge of before he paid off the $3,000 mortgage; so that in addition to the advice of his attorneys to the effect that Tibbetts’ claim was of noi forc’e or validity as against Mrs. Terrill’s title, which he had bought, he had the further assurance of a decree of a competent court of record, corroborating his attorneys’ judgment in that regard.
So far as Alley is concerned, there appears to be no badge of fraud disclosed by the record. The Terrills and he were practically strangers to each other at the time of purchase. The record taken as a whole rather tends to show that Alley was free at all times from actual fraudulent design and free from any actual knowledge or information of evil or fraudulent intent on the part of any one connected with the transaction. The only serious charge that can be made against him is that he was lacking in common business acumen and foresight in his dealings with this property. He therefore should stand in a court of equity in a favorable light and receive its protection, provided it can relieve him without doing injustice *76 to other interests' which are involved in the transaction. He stands alone in this litigation, both the Terrills and Gray having defaulted.
“As a general rule where the purchaser’s title to the land fails he will be subrogated to> the rights of the holders of liens or inc'umbrances which he has paid, or which have been paid out of the purchase money.” Am. & Eng. Enc. of Law, vol. 27, p. 239.
The cáse of Lynch v. Burt et al., 132 Fed. 417, 67 C. C. A. 305, is one in which the facts were quite similar to those found in the case at bar. The court said:
“The facts as clearly give Phipps an equitable claim or right to' reimbursement as they exclude Burt therefrom. She (Burt) was an active and conscious participant in the fraud, while he (Phipps) was an entire stranger to it for more than three years after it was committed, and was at no' time a conscious participant therein. He was constructively Chargeable with knowledge of it, because he entered into the written agreement with Burt, and' acquired! her title pending the present suit, 'and subsequent to the Gotzian decree. Pie also advanced the money to pay Burt’s counsel and other expenses in this suit, and was therefore constructively chargeable with her vexatious and wrongful effort to sustain the fraudulent transfer and to defeat the Complainant’s claim. The evidence, however, clearly establishes that in all this Phipps was acting in perfect good faith, without intent to defraud any one, in á mistaken belief in the honesty of Burt’s claim and: conduct, and under the approving advice of reputable counsel. * * * In pursuance of the agreement with Burt mto which he had entered in good faith, acting upon an honest belief that he had thereby acquired a right and incurred an obligation so to do, Phipps discharged and removed this paramount lien by paying $17,168.33 in redemption from the sale thereunder. Under the rules stated, he was entitled as against complainant to reimbursement for that expenditure, andi to' have its repayment made a condition ten the relief granted to complainant, *77 and declared a lien üpon the lands as the Gotzian claim had been. He was also entitled to interest .upon this sum from the date of the redemption,” etc.
In the instant case Alley stood in the same relative position as did Phipps in the one cited. Phipps was not a participant in any way in.the frauds perpetrated by Burt and others in having the title to the premises fraudulently deeded to Burt, for the purpose of cheating and defrauding the Creditors of the judgment debtor Bartholomew Pickert, and he knew nothing about those deeds until three years after they were made and given. In the instant case Alley knew nothing about the fraudulent deeds between Gray, David Terrill and Mrs. Terrill, given for the purpose of cheating and defrauding the creditors of David Terrill, until about ten months after they were given. Phipps, at the time he made his contract with Burt, agreed with her to discharge the Davis mortgage then on record. At the time Alley took the deed in- the instant case he agreed to pay the $3,000 mortgage.
In Tompkins v. Sprout, 55 Cal. 31, we have another case wherein the facts were noticeably similar to those of the case at bar. April 2, 1877, decision was rendered in favor of plaintiff Tompkins against defendant Charles Peterson, followed by final judgment on April 7th following. April 2nd, after decision, defendant conveyed the. land to his. brother Gustav Peterson. Gustav received the deed with full knowledge of Charles’ intent to- defraud the judgment creditor Tompkins and colluded with Charles in the fraud. April 24, 1879, execution on.the judgment was issued, and the.property sold thereunder, followed- by sheriff’s deed to- plaintiff. Between the issuing of the certificate of sale and execution of sheriff’s deed, and about -September 28th, defendant Sprout purchased the land from Gustav Peterson, and paid full value therefor, but he .had .no actual knowledge of the fraud against Tompkins in the deed from Charles to Gustav, though he had both actual and.constructive knowledge that the land' had been sold a,t sheriff’s sale as Charles’ *78 property and that plaintiff Tompkins held the certificate of sale therefor. He also had actual knowledge of the judgment in favor of Tompkins against Charles. At the time of the sheriff’s levy and sale of the premises, there was a valid mortgage on the property, which the defendant Sprout assumed and agreed to- pay at the time he took his deed from Gustav, and he afterwards paid off the same and had it discharged of record. Under these facts the court held that Sprout should have been protected, and that if Tompkins sold the premises Sprout would have a first lien thereupon for the amount he had paid to- release the mortgage. We quote from the opinion as follows:
“There being, at the time the plaintiff recovered his judgment against Charles Peterson, and at the time of the conveyance from Charles to Gustav Peterson, and at the time of the purchase by plaintiff under his execution sale, a valid, subsisting mortgage lien upon the property, it isi obvious that the latter cannot be injured by requiring of him payment of the amount of the lien as a condition precedent to' vacating the sale to the defendant. The court below expressly found that defendant had no actual knowledge of the fact that the Conveyance from Charles to- Gustav Peterson was fraudulent, and that the conveyance from the latter to defendant was constructively fraudulent only. In such case, a court of equity will protect the purchaser as well as the creditor, where, as here, both can be protected without injury to either. * * * Clements v. Moore, 6 Wall. 312 [18 L. Ed. 786] ; Coiron v. Millandon, 19 How. 115 [15 L. Ed. 575.]
“Applying the principles thus announced to the facts of the case under consideration, it is clear that the court below should have imposed upon the plaintiff, as a condition to vacating the sale to- defendant, and requiring a conveyance of the property from him to the plaintiff, the payment by the latter to the defendant of the amount paid by the defendant in the satisfaction and discharge of the mortgage lien existing upon the property during the time already stated. In this *79 way, and in this way only, justice can be done between the párties.”
From 20 Cyc. 647, we quote the following:
“But where the purchaser’s conveyance is merely constructively fraudulent, a court of equity in setting- aside the conveyance will protect him, as well as the creditor, where both can be protected! without injury to either, as by requiring that the purchaser be reimbursed for a prior incumbrance against the property which 'he has paid, or for taxes paid.”
“When the fact of fraud is established in a suit at law, the buyer loses the property without reference to the amount or application of what he has paid, and can have no relief either at law or in equity. But when' the proceeding is in chancery, the jurisdiction exercised is more flexible and tolerant. If it appears that the grantee has been guilty of no actual fraud, but the circumstances render it inequitable, equity, while it will set aside the Conveyance, will protect the grantee to the extent of his payment.” 14 Am. & Eng. Enc. of Lavo, 345.
See also 37 Cyc. 444.
None of the Colorado cases cited by counsel for either side involve the question we are now considering-.
Plaintiff in error contends that the law is settled by the overwhelming weight of authority that if a. purchaser expressly assumes the payment of valid mortgages of record at the time of purchase he thereby becomes the principal debtor, primarily and absolutely liable for the debt, and may not be subrogated to the benefit of the incumbrance upon making-payment according to his contract. There is authority supporting the rule, but a number of decisions seem to have qualified it and held the same not to be inflexible, viz.:
Matzen v. Shaeffer, 65 Cal. 81, 3 Pad. 92; Bressler et al. v. Martin et al., 133 Ill. 278, 2 N. E. 518; Young v. Morgan, 89 Ill. 199; Cameron) v. Holenshade et al., 13 Ohio Dec. 430, 1 Cin. R. 83; Bryson v. Myers, 1 Watts & S. (Pa.) 420; Peet v. Beers, 4 Inch 46.
*80 While the case of Capitol Nat. Batik v. Holmes, 43 Colo. 154, 95 Pac. 314, 16 L. R. A. (N. S.) 470, 127 Am. St; Rep. 108, deals with a situation but little similar to that existing in the instant case, I find the following language which indicates the court’s leaning, on the doctrine of subrogation:
“We think that the authorities largely preponderate in favor of the proposition that although the deed recites that the purchaser shall pay off the mortgage as a part of the purchase price he is entitled to the subrogation;” citing cases from Illinois, New York, Minnesota, Indiana and California. In the instant case the deed to Alley recited that he assumed and agreedl to pay this $3,000 mortgage. Strongly supporting this view are the following Cases: Young v. Morgan, supra; Bressler et al. v. Martin et al., supra; Matzen v. Shaeffer, supra. In the last case cited the Supreme Court of California held that the vendee paying off the existing mortgage as part of the purchase price entitled him to the benefits of the mortgagee as against the judgment creditor of his vendor, although the mortgage had been released of record, the court saying:
“This presents a case in which the interests of the appellant required that the lien of the mortgage which she paid off should be kept alive. Her interests can only be fully protected by regarding the transaction in which she p-aidi off the mortgage as an assignment of it to- her, and the lien as being kept alive for her security and benefit. * * * We think this is one of'the cases in which the satisfaction of a mortgage of record does not. o-f itself prevent a court of equity from holding that the payment of it operated as an assignment of it to the' person making the payment.
“There is nothing to indicate that appellant when she paid off the mortgage intended to purchase it, or to- have it kept alive for her benefit. It .does not appear that anything was said on that subject. She paid it off, andl the mortgagee without her request satisfied it of record. But the payment was made for her benefit, or for that of respondent. If the *81 payment under the circumstances operated as an equitable assignment of the mortgage to her, she gets the benefit of it. Otherwise the respondent. Now it is quite clear that she intended the payment. of the mortgage should inure to her own, and not to his benefit. She had in view her own, and not his interest. And it is only by. regarding the transaction as an .assignment of the mortgage to her that her interests can be protected and maintained, and a court of equity will presume that it'was intended-she should reap the benefit of her investment. Equity regards that as done which ought to- be done, and looks to the intent rather than to the form. There is no equitable ground on which the respondent could object to- the mortgage lien being kept alive for the protection of appellant’s interest, and the mortgage having been satisfied: of record when it should have been assigned to appellant, it was not error to vacate the satisfaction.”
If Alley acted in good faith in paying the mortgage, and with a desire to save his property from probable foreclosure, and under an honest belief that he had a good title thereto, then he should be protected by the court, if in so doing no injustice be done to Tibbetts. The payment of the mortgage was an entirely separate and distinct act from the taking of the deed from Mrs. Terrill. True, his deed gave him no title to the property as against, the judgment lien, but it does not necessarily follow' that because he failed to sustain the title which he thought he had, he thereby lost all right of subrogation which he might have otherwise possessed by reason of having paid off the mortgage. The integrity of the mortgage is in no way questioned. It was a valid lien of record when the transcript of jud'gment was recorded. Alley is not charged with any kind of fraud in its'payment.' Such being the case, wherein is Tibbetts prejudiced, or wherein does he lose any rights by requiring him to first pay this prior lien of $3,000 from the proceeds of the sale ?
In the two cases last cited the Supreme Court without cavil or hesitation invoked equitable principles to administer *82 Common justice and prevent a serious wrong and financial loss to one who was not in any way chargeable with any actual fraud, connivance or evil design, against the' judgment creditor, and we say here that this mortgage against which no suspicion of invalidity is suggested was paid off by Alley as part of the purchase pric’e under his agreement to do so, and even though nothing" was said at the time as to whether or not he intended to rely upon the mortgage as a protection against Tibbetts’ judgment lien, equity will presume that his intention in paying it off was to have it inure tO' his own benefit, and not that of the judgment creditor. It is clear that at the time Tibbetts’ transcript of judgment was filed in Rio Blanco county, the mortgage was of record, in full force and effect, and the creditor could by no' rule of law or equity have sold the property under the execution free from the lien thereof. It appears to be a well settled rule of law that a levy by execution or attachment is effective only as against the interest or title in real property which the judgment or attachment debtor has at the time of such levy or attachment. Under .these circumstances we do not see why the rights of the judgment creditor Tibbetts should be enlarged, or the value of his judgment lien increased by the fraudulent acts of his judgment debtor. After a court has defeated the evil design, of a judgment debtor to defraud his creditors, by setting aside a fraudulent deed given by the debtor for that purpose, we know of no rule of equity that would, as a penalty for the debtor’s fraud, destroy the right of subiogation in a third person who has paid off a mortgage which was a paramount lien to that of the creditor’s judgment.
Most of the cases cited by plaintiff in error involve transactions between fraüdulent grantors and their immediate fraudulent grantees, wherein all are actual parties to the fraud; hence those cases do' not apply to a state of facts such as we are now considering. The general rule seems to be that a fraudulent grantee who has actually and knowingly participated in the fraud has no standing" in a court of equity *83 for any purpose, and will not be subrogated or otherwise protected' for moneys paid. in discharging liens existing at the time of the fraudulent purchase. We think, however, that a purchaser from such fraudulent grantee, who- has only Constructive knowledge of the fraud, and has no knowledge or information of the fraudulent intention of those perpetrating the same, and in no, way participates therein, ought not to- be denied relief in a court of equity, where such relief works no injury to- others. We think the authorities cited amply support, our conclusions and are well grounded in sound, equitable principles.
The judgment will be reversed and the case remanded to the District Court for further proceedings as the parties may be advised, and in case the property be sold under the Tibbetts judgment, there shall be first paid to defendant in error Alley, out of the proceeds thereof, the sum- of $2,000, being the amount of the homestead exemption, plus the $3,000 which was paid to- release the mortgage; the balance, if any, to be applied on the plaintiff’s judgment; plaintiff in error to recover his costs.

Reversed and Remanded.